[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION TO DISQUALIFY
Day, Berry Howard for plaintiff.
Robinson Cole for defendant.
The plaintiffs, through their counsel, Robinson 
Cole, filed a motion to disqualify the law firm representing defendant Minwax Company, Inc., in accordance with Practice Book Section 196. As grounds for this motion, plaintiffs assert that the law firm of Day, Berry Howard (hereinafter DBH) has an unavoidable conflict of interest adversely affecting the plaintiffs.
A fire occurred at St. John's Episcopal Church in West Hartford, Connecticut, on or about October 10, 1992. Plaintiffs contend that the fire was caused by spontaneous combustion of rags impregnated by Watco Danish Oil finish which was manufactured and distributed by defendant, Minwax. This finish was applied to wood fixtures in the church on the day of the fire by a parish work crew. The fire occurred in the evening after the work crew finished performing their work and caused damage in excess of $5,000,000. The Church and the Episcopal Diocese of Connecticut were insured by CNA Insurance Company which reimbursed St. John's Parish and the Episcopal Diocese in excess of $5,000,000 as a result of this fire.
The instant action was instituted to assert CNA subrogation rights and an insurance deductible of $5,500. against the entities plaintiffs contend are responsible for the fire. Minwax, through its National counsel, Haight, Brown and Bonestell; of California has retained DBH to represent it in this litigation. DBH has acted as local counsel for Minwax in other fire litigation in the State of Connecticut. Two members of Haight, Brown have been admitted to practice in Connecticut in this case, pro hac vice.
The administration of St. John's Parish from a property standpoint is performed by a committee of vestry members which is composed of various parish members and is analogous to a Board of Directors of a corporation. The officers of the vestry are known as wardens. The position of Senior Warden is analogous CT Page 12106 to the Chair of the Board of Directors; and the position of Junior Warden is analogous to a Vice-Chairman. At the time of the fire Mr. Robert Wetzel was the Senior Warden and Ms. Lynn Walker was a Junior Warden. Part of the Junior Warden's duty included overseeing the parish building and grounds committee. Ms. Walker is a partner in the law firm of DBH specializing in estate practice. As of today she is the Senior Warden of the parish.
The plaintiff argues that DBH cannot represent Minwax because Minwax's interests are materially adverse' to St. John's Parish and is precluded by Rule 1.7 of the Connecticut Rule of Professional Conduct. Said Rule provides: (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibility to another client or to a third person or by the lawyer's own interest unless:
 (1) The lawyer reasonably believes the representation will not be adversely affected; and
(2) The client consents after consultation.
DBH maintains that it obtained the consent of St. John's Parish before agreeing to represent Minwax.
In the opinion of this court, there is a clear and obvious conflict of interest with DBH's representation of Minwax under Rule 1.7. Ms. Walker owes a loyalty to her firm, DBH, of which she is a partner and to their clients. She owes a loyalty to the parish in which she was a Junior Warden at the time of the fire and is now the Senior Warden. Under Rule 1.10 the firm of DBH is precluded from representing Minwax since its partner, Ms. Walker, has this conflict of interest. Rule 1.10 provides: While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.
DBH does not seriously contest the fact that a conflict of interest exists but as stated above, bases its case primarily upon its claim of having received the consent of a representative of St. John's Parish and a representative of the Connecticut Diocese. Thus the court will not go into any further detail with respect to the conclusion a conflict exists.
The Plaintiffs deny that any informed consent was ever given. CT Page 12107
DBH has represented Minwax in Connecticut in the past. In fact, it was involved in at least three suits in Connecticut at the time of the fire and shortly after the incident anticipated that it might be asked to represent Minwax in this case. It had also represented St. John's Parish in the past on some pro bono work which had no relation to this case. Thomas Groark, a partner of DBH, phoned Mr. Robert Wetzel, whom he had been associated with on the Board of the Hartford Stage Company and whom he knew socially, to inquire as to whether St. John's would have any objection to DBH representing Minwax in this case. The conversation was based primarily upon the fact that DBH had done work for the parish in the past and no detailed discussion of the current case or the problems posed by Ms. Walker's dual role took place. There may have been a second conversation but neither party has any clear recollection of whether it took place or what was said. Mr. Wetzel replied that he had no objection to DBH's representation of Minwax concerning the fire and any ensuing litigation. However, he felt that he had made it clear that he had no authority to waive such objection on behalf of St. John's Parish or the insurer CNA, and that he would have to be guided by both the insurer and the counsel for the insurer in this matter. Mr. Wetzel viewed this phone call as a discussion of the possibility of St. John's waiving DBH's conflict at some point in the future, subject to discussion with both the insurer and counsel for the insurer.
Edwin G. Hebb is an Attorney who had represented the Episcopal Diocese of Connecticut in the past. Mr. Groark telephoned Mr. Hebb and DBH maintains that through him it obtained a consent to represent the Episcopal Diocese of Connecticut. Mr. Hebb indicated that he saw no conflict with DBH representing Minwax, but that the ultimate decision had to be made by the Diocese, namely by Mr. John W. Spaeth, III, who was the Director of Administration and Finance for the Diocese. At that time, Mr. Hebb was not aware of the true involvement of Ms. Walker in this matter.
Mr. Wetzel was of the opinion that he required the permission of the vestry before he could give permission for St. John's Parish but such permission was never obtained. There followed a series of letters and telephone calls as follows:
The telephone call to Mr. Wetzel took place on or about November 23, 1992. CT Page 12108
On November 30, 1992 DBH sent a letter to counsel for CNA confirming the telephone conversation. In this letter, Mr. Walker of DBH, attempted to limit Mr. Wetzel's reservations to an adverse effect on St. John' s contractual rights with CNA under its policy and stated that unless CNA disclaimed coverage for St. John's, he intends to proceed to act as counsel for Minwax. He requested an answer by December 15th.
On January 8, 1993 Mr. Groark sent a letter to Mr. Wetzel with a copy to counsel for CNA with a copy of the letter of November 30th to Mr. Wetzel. In it he states "As a result of your permission and hearing nothing from Mr. Belz, we have advised Minwax that we will be representing it in connection with this matter."
January 12, 1993; counsel for CNA sent a letter to Mr. Groark disagreeing with his conclusion that CNA has made any decision in this matter, indicating that he had discussed the matter with Mr. Walker and they agreed that before any decision was made, he should interview Ms. Walker. He explained the reasons why he had not contacted Ms. Walker before now, and requested contact with Ms. Walker within 10 days so that he might question her concerning her involvement and knowledge of the incident. He also indicated that he would appreciate "learning how your firm and Ms. Walker propose to have her insulate herself in this matter, given both her law firm duties and church duties and the potential for litigation between the church and LF Products/Watco." He expressed the opinion that she may even be a potential witness in the case.
Approximately 6 months later, on July 23, 1993, counsel for CNA addressed a letter to Mr. Groark stating that after reviewing the file and conferring with the management of the Episcopal Diocese of Conn., St. John's Parish, the witnesses to the events that are relevant to the case and with the lawyers they have selected to serve as local counsel they object to DBH's representation of Minwax in the litigation to be commenced as a result of the St. John's fire. He expressed the opinion that DBH would be in "an untenable conflict of interest" if they represented Minwax and outlined the factors upon which they based that opinion. Among the considerations mentioned is that Lynn Walker, a partner in DBH, participated in management decisions prior to the fire which may have an impact on liability issues; she is a fact witness since she was part of the Saturday work crew and saw the product being used and she will be a key damage witness and because CT Page 12109 of her church office she had been actively involved in the negotiations with CNA.
On August 25, 1993 DBH, acting by Philip S. Walker, sent a letter to counsel for CNA protesting CNA's objection to their representation of Minwax. In this letter, DBH characterized Lynn Walker, as being at best, a cumulative witness regarding any material issue and stated that if DBH were to withdraw, Minwax would be disadvantaged by the time and expense which would be required to replicate with new counsel their understanding and experience with the product and the technical issues involved in the claims. The letter also raised, for the first time, the issue of consent by Robert Wetzel and his "request, however, that we contact your office to confirm that the waiver by St. John's would not adversely affect the contractual rights with CNA."
On November 5, 1993, counsel for CNA addressed a letter to Mr. Walker denying that there ever was any waiver by the Diocese or by St. John's and explained that Mr. Wetzel had indicated that he had no "personal objection" to the firm's involvement but that he would have to look to CNA's counsel. He also indicated that the issue of the conflict of interest, which was raised, has no direct relationship to the issue of coverage or the contractual relationship between CNA and its insured. He protested an attempt by DBH to restrict CNA's contacts with a critical witness, Lynn Walker, and he assured Mr. Walker that plaintiffs are not objecting to the representation of Minwax in an effort to gain an unfair tactical advantage.
On December 13, 1993 DBH through Mr. Walker, informed CNA's counsel that they had given consideration to CNA's reasoning and their conclusion remains the same, that they are not disqualified from representing Minwax in this matter.
In this matter the court has also had the benefit of affidavits by Mr. Groark, Mr. Wetzel, Mr. Hebb and the benefit of depositions by Mr. Wetzel and Mr. Groark. The defendant's counsel argues not only that there was a valid consent or waiver but that, in fact, due to the six month delay between CNA's contacts with them, it had gone ahead and begun the preparation of the case and that to be disqualified at this time would cause hardship and prejudice to its client. DBH has, as indicated above, also raised the argument that the attempt by the plaintiffs to disqualify it as defendant's counsel is not based upon any real conflict or prejudice to the plaintiff but upon an CT Page 12110 attempt to gain an unfair tactical advantage. Both parties, each for its own purpose, have brought to the court's attention the reluctance of courts to disqualify counsel from representing clients of their choice and the danger in doing so.
The above is a brief summary of the voluminous briefs, exhibits, depositions and the two distinct hearings with oral arguments presented in this case.
Based upon all of the information brought before it, this Court, although reluctant to do so, has come to the conclusion that not only does a conflict of interest exist between the law firm of Day, Berry Howard and the plaintiffs in this case, but that despite the arguments to the contrary, no informed consent was ever given by any of the plaintiffs to waiving this conflict. The motion to disqualify Day, Berry Howard as counsel for Minwax is granted.